10017

BROWN v. SOUTHERN RY. CO.

(96 S. E. 298.)

1. CARRIERS—INJURY TO GOODS—INSUFFICIENT REFRIGERATION—BURDEN OF PROOF.—The rule of the Interstate Commerce Commission that carriers shall be relieved for failure to keep cars under refrigeration before the first re-icing station is reached, if shippers delay the cars at loading station more than 24 hours, casts' the burden upon the shipper in such case to prove that damage from insufficient refrigeration was caused by negligence of carrier after reaching the re-icing station.

2. CARRIERS — INSUFFICIENT REFRIGERATION — EVIDENCE.—In action by shipper against carrier for damage occasioned by insufficient refrigeration, evidence *held* not to suppost a finding that carrier was negligent.

Before RICE, J., Barnwell, Summer term, 1917. Reversed.

Action by Charlie Brown against the Southern Railway Company. Judgment for plaintiff, and defendant appeals.

The defendant's exceptions are as follows:

(1) Because his Honor erred in not requiring plaintiff to introduce in evidence the bill of lading, which showed the contract entered into by the plaintiff and defendant, and allowing the plaintiff to make out his case without requiring him to introduce in evidence the said bill of lading, which would have shown the contract between the plaintiff and the defendant.

(2) Because his Honor erred in refusing defendant's motion for a nonsuit upon the ground that the plaintiff failed to introduce in evidence the bill of lading, which showed the contract between the plaintiff and the defendant, and it is respectfully submitted that his Honor committed an error of law in not requiring the plaintiff to introduce the same, in order to show the relation between the plaintiff and the defendant.

(3) Because his Honor erred in refusing defendant's motion for a nonsuit upon the ground that, under the allegations of the complaint and from the testimony, there could have been but one inference formed, and that was, if the plaintiff was damaged as alleged, the negligence or carelessness of the defendant was not the proximate cause, but, on the contrary, if the plaintiff was damaged at all, it was directly caused by the negligence and carelessness of the plaintiff himself in allowing said refrigerator car in question to remain at Ashleigh siding from Saturday morning until Tuesday night.

(4) Because his Honor erred in refusing defendant's motion for a direction of a verdict upon the grounds stated herein; whereas, his Honor should have granted said motion, when it was conclusively shown by the testimony that, if the car in question arrived in New York City in a decayed condition, the said condition of said cantaloupes was caused by the negligence and carelessness of the plaintiff, and not the negligence and carelessness of the defendant.

(5) Because his Honor erred in refusing defendant's motion for a direction of a verdict upon the ground that the testimony showed that the car of cantaloupes, after leaving Ashleigh siding, was re-iced at every regular point between Ashleigh siding and New York City, to which place it was consigned, and that the said car of cantaloupes moved from Ashleigh siding on the night of July 13, 1915, and arrived at St. George, Staten Island, N. Y., at 3:34 a. m., July 16, 1915, where it was transferred to a float and arrived in New York City, July 16, 1915, at 4:50 p. m.

(6) Because his Honor erred in refusing to charge defendant's first request: "I charge you that under the testimony in this case it is conclusively shown that the negligence and carelessness of the defendant as alleged in the complaint was not the proximate and direct cause of the damage, and I, therefore, direct you to render a verdict for the defendant"—whereas, it is respectfully submitted that he should

have charged said request, and directed the jury to find a verdict for the defendant, in that he charged defendant's sixth request: "I charge you that, if plaintiff delayed refrigerator car at Ashleigh, S. C., more than 24 hours from the time it was first set for loading pursuant to his order, the defendant should be relieved from all liability for failure to keep such car under refrigeration at Ashleigh, S. C., and between this point and Columbia, S. C., the first refrigeration station," as under the testimony in the case the plaintiff was not entitled to recover under the conditions contained in the tariff, which provided, in part, as follows: "Note 3.—If shippers delay ice cars at loading stations more than 24 hours from the time they are set for loading pursuant to their orders, carrier shall be relieved from all liability for failure to keep such cars under refrigeration at loading point and between loading point and the first re-icing station." The defendant respectfully submits that under this condition contained in said tariff and under the testimony in the case the presiding Judge erred in refusing to charge the jury that the plaintiff was not entitled to recover.

(7) Because his Honor erred in charging the jury: "It is for you to say whether or not when the car that he shipped had stood at Ashleigh station for more than 24 hours without being reiced before it was moved out. Now, if Mr. Brown himself filled that car with ice, and properly iced it after his melons were put in it, and put in a condition so that they could move it out before the 24 hours, then he complied with the conditions laid down in that tariff"— whereas, it is respectfully submitted that under the conditions contained in said tariff that FGE car No. 21619 was delayed by the plaintiff from Saturday morning until Tuesday night, and, this being so, the defendant was relieved from all liability for the failure to keep the said car under refrigeration at loading point and between loading point and the first re-icing station.

(8) Because his Honor erred in charging the jury as follows: "I do not think it makes any difference at all in this case as to who put the ice in that car. The question is: What was the condition of the car? The railroad company is supposed to know the nearest re-icing station from Ashleigh, and the presumption is that, if they say that they will not guarantee it if you keep it over 24 hours without putting it in a condition that we can move, that if that car was re-iced within 24 hours, and moved out within 24 hours, it would reach the next re-icing station in good condition. If part of the melons were put in there, and remained over 24 hours without re-icing, and that caused these cantaloupes to spoil, then Mr. Brown cannot recover for that part of the carload. So it is for you to say as to whether or not he has satisfied you that the failure to re-ice that car was the proximate cause of the injury or damage done to his carload of cantaloupes"—whereas, it is respectfully submitted that, under the conditions contained in said tariff and under the testimony in the case, it is an admitted fact that this car of cantaloupes remained at Ashleigh siding from Saturday morning until Tuesday p. m., and under the testimony it was shown that the plaintiff was without authority to re-ice the car at Ashleigh siding, and the defendant was only required to place the car, properly iced, at loading station, and have it properly iced at the first re-icing station, which was at Columbia, S. C., in this case, and that refrigerator cars are not supposed to be iced by shippers, but only at regular icing stations operated for that purpose by the Fruit Growers' Express.

(9) Because his Honor erred in charging the jury as follows: "Under the tariff the railroad company says: We will put the car through properly iced, and we will carry sufficient ice for 24 hours, and after that time, if your melons spoil for more re-icing, we are not responsible. It is for you to say how long this car stood on that siding without any ice in it. If it stood 24 hours without being iced, and the

melons were damaged by reason of that fact, they did not have enough ice in the car, then Mr. Brown cannot recover"—whereas, it is respectfully submitted that under the conditions contained in said tariff the defendant was relieved of all liability if the said car remained at Ashleigh siding 24 hours without being re-iced, and it is respectfully submitted that the said car remained at said siding from Saturday until Tuesday p. m., and his Honor erred in not charging the jury that the plaintiff was not entitled to recover in his action.

(10) Because his Honor erred in refusing defendant's motion for a new trial made upon the minutes of the Court.

*Mr. J. E. Harley,* for appellant, submits : *There is no evidence of negligence or carelessness as alleged in the complaint, upon which the verdict should have been based: 78* S. 249. *Respondent had no right to take the ice out one car and place it in the other. Icing the car was the duty of the carrier and not of the shipper:* 101 S. C. 6; 95 S. C. 431 ; 158 U. S. 98; 39 L. Ed. 910; 202 U. S. 242; 50 L. Ed. 1011; 204 U. S. 426; 57 L. Ed. 553.

*Messrs. A. H. Ninestein* and *Bates & Simms,* for respondent.

July 6, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff brought this action to recover $178.80 damages alleged to have been sustained by him on account of defendant's failure to keep under refrigeration a carload of cantaloupes shipped by him from Ashleigh, S. C., to New York City. At the conclusion of all the evidence, defendant asked for a directed verdict, on the ground that the evidence was susceptible of but one inference, to wit, that the damage

was not caused as alleged by plaintiff, but that it was caused by plaintiff's violation of the following rule of the Interstate Commerce Commission, governing the use of refrigerated cars:

"If shippers delay ice cars at loading stations more than twenty-fours from the time they are set for loading pursuant to their orders, carrier shall be relieved from all liability for failure to keep such cars under refrigeration at loading point and between loading point and the first re-icing station."

The Court refused defendant's motion, and submitted the case to the jury, and they returned a verdict for plaintiff for $119. From judgment thereon defendant appealed.

There are several assignments of error, but the turning point of the case (and that is the ground chiefly relied upon by appellant) is the refusal of the motion for a directed verdict; that ground only need be considered, for, upon a careful analysis of the evidence, under the law applicable to the case, the conclusion is irresistible that the motion should have been granted.

In essential points, the evidence is undisputed. On plaintiff's order, the car in question was placed at Ashleigh early Saturday morning, July 10, 1915, properly iced. He began to load it, and put into it 150 crates of cantaloupes. (It takes about 450 crates to fill a car.) But, as plaintiff's cantaloupes were not ripe enough to gather, and as he could not get sufficient labor, he found that he could not finish loading the car that day, and suspended operations until Monday, July 12th, when he resumed and continued the loading until about noon of that day, when he again suspended operations until Tuesday, July 13th. In the meantime he had ordered another car, which was placed early Monday morning. Seeing that he would not be able to load both cars, on Monday night he took the ice out of the second car and put it into the bunkers of the one that he was loading, and finished loading it on that day, July 13th, and

obtained a bill of lading and turned it over to defendant in the afternoon of that day. The car went forward by the first train thereafter and reached its destination without any delay.

One of the commission merchants to whom the car was consigned testified that when he received it at 1:30 a. m., July 17th, the melons appeared to have been damaged from lack of refrigeration; but he did not say that the car was not properly refrigerated at that time. On the contrary, he said that he did not notice the condition of the icing, as he had no way of seeing it.

The testimony on behalf of defendant, which was not contradicted or impeached in any way, showed that the bunkers of the car held 9,600 pounds of ice; that when it arrived at Columbia, S. C. (at 4 a. m., July 14th), the first re-icing station after leaving Ashleigh, it took 8,700 pounds of ice to fill the bunkers—thus showing that there could not have been more than 900 pounds of ice in the bunkers, which, according to the undisputed testimony, was not enough to properly refrigerate the car and its contents. It was re-iced at the next station (Spencer, N. C.), at 3:55 p. m., July 14th, taking 3,300 pounds, and again at Potomac yards, the next and last re-icing station en route, at 6:50 a. m., July 15th, when it took 2,600 pounds to fill the bunkers; and the undisputed evidence is that that was sufficient to carry it safely to destination, where it arrived at 4:50 p. m., July 16th, and was delivered to consignees at 1:30 the next morning.

The burden was upon plaintiff to prove that the damage alleged was caused by defendant's failure to keep the car refrigerated after its arrival at Columbia, for, under the tariff regulation above quoted, plaintiff's delaying the car for more than 24 hours after it had been placed for loading relieved defendant from all liability for failure to keep it under refrigeration at that point, and between that point and Columbia.

The evidence does not warrant the inference that the damage was caused as alleged, but rather the contrary, to wit, that it was caused by delaying the car at Ashleigh; and the finding that it was caused by lack of refrigeration after it left Columbia is not supported by evidence, but rests solely upon conjecture. The verdict itself shows that the jury found that the damage was caused, in part, at least, by delaying the car at Ashleigh, for, notwithstanding plaintiff proved damages to the extent of $179.80, the jury awarded him only $119, and yet there is not a particle of evidence upon which they could have apportioned the damage.

Judgment reversed.

Messrs. Justices Fraser and Gage concur.

Mr. Chief Justice Gary, *dissenting.* This is an action for damages, alleged to have been sustained by the plaintiff, through the negligence of the defendant, in failing properly to re-ice a refrigerator car loaded with cantaloupes, consigned by the plaintiff to a commission merchant at New York City. The defendant made a motion for a nonsuit, on the ground that, if the plaintiff sustained any damages, they were caused directly by the negligence of the plaintiff in allowing the refrigerator car in question to remain at Ashleigh, S. C., from Saturday morning until Tuesday night. At the conclusion of all the testimony the defendant also made a motion for the direction of a verdict, on the ground that the testimony shows conclusively that the said car, after leaving Ashleigh, contained ice, and was re-iced at all regular re-icing points between Ashleigh and New York City, to which place it was consigned. Both motions were refused.

The claim was for $179.80, the jury rendered a verdict in favor of the plaintiff for $119, and the defendant appealed, upon exceptions which will be reported. The

defendant introduced in evidence what is known as the "I. C. C. A.—6000" tariff regulation, which contains, among other things, the following:

"Note 3. If shippers delay ice cars at loading stations, more than twenty-four hours from the time they are set for loading, pursuant to their orders, carrier shall be relieved of all liability, for failure to keep such cars under refrigeration at loading point, and between loading point and the first re-icing station."

Upon the request of the defendant, his Honor, the presiding Judge, charged the jury as follows:

(1) "I charge you that, in order for the plaintiff to recover in this case, you must find from the testimony that the defendant was negligent and careless in failing to have the car in question re-iced while in transit as charged in the complaint."

(2) "I charge you that, if you find that the damage complained of was due to the plaintiff's own negligence, or caused by plaintiff in withholding the car in question a number of days, and that said car was partly loaded and held in this condition for a sufficient length of time for the loading to have become damaged, the plaintiff cannot recover."

(3) "I charge you that, even if you find that the defendant was negligent and careless, as alleged in the complaint, but at the same time find that the plaintiff was negligent and careless in the handling of his cantaloupes, in withholding the car, and plaintiff's negligence was the direct and proximate cause of the damage, your verdict should be for the defendant."

(4) "I charge you that, if plaintiff delayed refrigerator car at Ashleigh, S. C., more than 24 hours from the time it was first set for loading pursuant to his order, the defendant should be relieved from all liability for failure to keep such car under refrigeration at Ashleigh, S. C., and between this point and Columbia, S. C., the first refrigeration station."

In other words, the appellant requested his Honor, the Circuit Judge, to charge that the defendant would only be liable for its failure to keep the car under refrigeration between the first and the last re-icing stations, but not at the loading point and between loading point and the first re-icing station, in case the plaintiff delayed the car at the loading station more than 24 hours from the time it was set for loading pursuant to his orders. The general charge of the presiding Judge was in harmony with the said requests.

The appellant's attorney argued the second, third, fourth and fifth exceptions together, and contended that they should be sustained, on the ground that there was no evidence of negligence or carelessness on the part of the defendant. These exceptions are overruled, for the reason that the testimony, in this respect, was conflicting and subject to more than one reasonable inference.

The sixth exception, assigning error on the part of the Circuit Judge in refusing to charge the defendant's first request, was properly overruled for the same reason.

The error assigned in the seventh and eighth exceptions is that his Honor charged the jury that, if the car was properly re-iced by the plaintiff, it had the same effect as if it had been re-iced by the defendant. The fact that a proper re-icing by the plaintiff would protect the melons from decay, as effectually as if it had been re-iced by the defendant, shows clearly that these exceptions cannot be sustained.

The ninth exception cannot be sustained, as the charge therein quoted was not prejudicial to the rights of the defendant, but, on the contrary, was too favorable.

For these reasons I dissent.

MR. JUSTICE WATTS concurs in the dissenting opinion of MR. CHIEF JUSTICE GARY.